EDWARD S. KERN, appellant, v. THE MAYTAG COMPANY of Newton et al., appellees.

No. 50614.

(Reported in 116 N.W.2d 430)

JULY 24, 1962.

Zastrow, Noah & Smith, of Charles City, for appellant.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellees.

OLIVER, J.—Plaintiff, Edward S. Kern, of Minneapolis, Minnesota, furnishes and installs floor and wall coverings in buildings, under the name of The Kerntile Company. Defendant Arthur H. Neumann & Bros., Inc. is a construction company located at Des Moines. As principal contractor, it had contracted with the property owner, defendant The Maytag Company, to furnish the labor and materials for the construction of an addition to and the remodeling of an office building in Newton.

September 8, 1958, plaintiff Kern and defendant Neumann, Inc., executed a contract upon a printed form, entitled, "Uniform Subcontract", in which Kern agreed to "furnish labor, material and equipment to install, complete, all composition floor covering and a portion of the Vinyl cove base required for the above building, in strict accordance with the Base Bid", Alternate No. 1 and Addenda No. 1 and No. 2 of the general contract, and with the architect's plans and specifications, and subject to the architect's approval. The subcontract recited it was made to enable the contractor to carry out the general contract and that all the terms and conditions contained in the general contract and the plans and specifications were a part of the subcontract, and particularly that the work and materials would be subject to the provisions of the general contract, plans and specifications with respect to approval or rejection by the architects.

Kern performed most of the subcontract but left it incompleted June 15, 1960. Thereafter Neumann engaged Krantz Brothers of Des Moines to complete it, on a cost-plus basis. Kern's contract price for labor and materials was $59,022, not including some extras. Neumann had paid $54,982.91 on the contract. Kern filed a mechanic's lien for $7873.70 and brought this suit in equity against Neumann, Inc., and The Maytag Company to establish and foreclose said lien. Defendant Neumann counterclaimed for damages for the expense of completing plaintiff's subcontract.

Trial resulted in judgment disallowing plaintiff's claim and allowing the counterclaim of defendant Neumann against plaintiff in the amount of $2,340.85 with interest and costs. Plaintiff has appealed.

I. Before the subcontract was signed Neumann at one time had discontinued the negotiations because Kern refused to

furnish a performance bond. That matter was adjusted by the insertion of the following provision in the subcontract:

"It is agreed that all payments to be made by the contractor under the terms of this subcontract that cover the purchase of materials by the subcontractor shall be paid for by a check made out jointly to the subcontractor and his material supplier. * * *."

Continuing, the subcontract provided:

"The subcontractor agrees to keep the job site free from accumulations of waste materials caused by his employees or work, and upon completion of his work to remove all his rubbish, tools, scaffolding and surplus materials from the building site."

The subcontractor agrees to: "Begin work in the new portion of the building on approximately April 1, 1959, and complete all work in this part by approximately June 1, 1959, begin work for the remodeling of the existing building on approximately October 1, 1959, and complete all work by approximately November 15, 1959.

"In case the subcontractor after five (5) days written notice by the contractor refuses to or cannot complete the several portions as above stated, the contractor reserves the right to hire the work done and deduct the cost of said work from the amount due to the subcontractor under this contract."

The contractor agrees to pay the subcontractor, in monthly payments, $59,022, "for said materials and work, said amount to be paid as follows: ninety per cent (90%) of all labor and material which has been placed in position by said subcontractor, to be paid on or about the fifteenth of the following month, except the final payment, which the said contractor shall pay to the subcontractor within thirty days after the subcontractor shall have completed his work to the full satisfaction of said architect and/or owner and satisfactory evidence that all obligations have been paid."

Kern's men worked from April 13 to April 29, and from June 7 to August 26, 1959, from February 29 to April 4, 1960, and from May 3 to June 15, 1960. Then they left the job unfinished.

The tile and other materials for the subcontract were sold to Kern by Robbins Floor Products, Inc., Tuscumbia, Alabama,

who shipped them consigned to "The Kerntile Co., Newton, Iowa, c/o Arthur H. Neumann & Bros., Inc., c/o Maytag Office Bldg." Most of the shipments arrived at times when Kerntile employees were not working on this job, and Neumann's construction foreman, Gerald E. Jacobs, signed receipts for such shipments. He testified they did not count each tile but checked the number of boxes containing tile and other material, piled them in the basement and covered them with a tarpaulin. Wire was placed around the bottom of the pile to keep it intact. This was in February 1959.

Neumann exercised no control nor supervision over this pile except to move it to another part of the building when the construction work later made that necessary. The expenses of unloading and of moving it were charged to and accepted by Kerntile. It appears there were additions to it of a shipment of materials from Robbins to Kerntile in July 1959, and a relatively small shipment in September 1959. Kerntile did not keep an inventory control of materials nor any record of the amounts it used from the pile.

June 8, 1960, Kern, Neumann and others attended their regular Wednesday meeting at the job site. At that time Kern told them, "that they had run out of light tile and it had been stolen." This was followed by a demand that Neumann, at its own expense, furnish the materials necessary to complete the job. Neumann refused, gave Kern five days written notice to return to the job, as provided by the subcontract, and upon Kern's refusal engaged Krantz Brothers of Des Moines to complete it.

Thereafter Kern filed his mechanic's lien and instituted this suit.

■ II. Appellant-Kerntile and appellee Neumann are the active parties to this appeal. Although there are several areas of disagreement between them, the basic issue is, which had the legal obligation to furnish the additional tile and other materials required to complete the subcontract. The subcontract provided that appellant furnish "the labor and materials." Therefore the burden was upon appellant to explain or excuse his refusal to furnish all the necessary materials. The trial court concluded appellant had this obligation, that appellant abandoned the

contract without just cause and Neumann was justified in employing Krantz Brothers to complete the work, upon appellant's refusal to do so following the five-day notice. We agree with this conclusion.

The record shows approximately one hundred thousand square feet of tile and the material for laying the same had been purchased by appellant from Robbins, the material supplier, delivered to this job site and placed in a pile from which appellant used it. It was more than a year later that appellant discovered he was running out of tile. He testified he had purchased approximately one-half per cent more tile than his computation showed was required to cover the areas in question. Witnesses for appellee testified the standard allowance for waste in such cases is two and one-half to three per cent.

The architect testified appellant's work was "marginal poor" and that appellant had to replace tile adjacent to junction boxes. There was poor workmanship in the front main entrance lobby and the main corridor and generally in connection with the module lines, requiring many irregular offsets to get back upon the module lines. All of this was not corrected. In the center hallway approximately one thousand square feet of tile was relaid.

The testimony relied upon to show the shortage of tile was caused by theft, was that of Kern's employee Mikkelson, substantially as follows:

About May 1960, on Friday night, at closing time, he placed out about eight boxes of tile, each about nineteen or twenty inches high by nine inches square. When he returned Monday morning these were gone. They were not able to discover where these went. He did not know whether they were stolen or misplaced. The Maytag Company had a guard on the premises and at the exit and entrance to the Maytag property.

There is no substantial evidence to support appellant's contention the tile shortage was caused by theft. On the other hand, there is substantial evidence the number of tile furnished was insufficient to allow for normal waste and that the number required was increased by the replacing of parts of the work which the architect refused to accept. The subcontract did not

require that appellant furnish a specified amount of tile or other material. It provided he should furnish for a specified total price, the labor, material and equipment to perform it.

III. Section 572.2, Code of Iowa, 1958 (1962) provides every person who shall furnish any material or labor upon any building or land for improvement thereof, shall have a lien thereon to secure payment for material or labor furnished or labor performed. Appellant cites decisions holding the delivery of materials to the site, for the improvement, constitutes "furnishing" them within the meaning of the statute. Neilson, Benton & O'Donnel v. Iowa Eastern R. Co. (1879) 51 Iowa 184, 190, 191, 1 N.W. 434, 33 Am. Rep. 124, affirmed on rehearing, 51 Iowa 714, 716, 3 N.W. 779; Frudden Lumber Co. v. Kinnan (1902) 117 Iowa 93, 95, 90 N.W. 515; Hobson Bros. v. Townsend, 126 Iowa 453, 454, 455, 102 N.W. 413; A. E. Shorthill Co. v. Aetna Indem. Co., Iowa, 124 N.W. 613, 614 to 618.

These and other decisions of the courts are considered in an annotation in 39 A. L. R.2d 394 to 453, entitled, "Delivery of Material to Building Site as Sustaining Mechanic's Lien." It will be observed the cited decisions of this court and, in general, of other courts, involve liens of claimants furnishing materials only, such as Robbins in the case at bar, had its account been unpaid. As stated in the Shorthill case, supra, (124 N.W. at page 616): " 'The merchant, having sold and delivered the materials for the purpose of being used in the building, could do no more. It would be unjust, then, to throw upon him the risk of their future application.' "

Appellant's status, as concerns materials furnished, was basically different from that of the manufacturer and merchant Robbins. After their delivery to the building site Robbins had not even the right to inspect such materials. On the other hand, the contract required appellant, who had purchased them from Robbins, to use the materials. They were in appellant's actual possession for that purpose. Robbins' bill was being paid with appellant's money.

The subcontract provided payment to appellant should be made monthly for "90% of all labor and material which has been placed in position by said subcontractor." This provi-

sion would not require the conclusion that the parties intended the title to these materials to pass from appellant before they were incorporated in the building.

We find no substantial basis upon which appellant may avoid responsibility for the shortage of tile and other materials.

The judgment of the trial court is affirmed.—Affirmed.

GARFIELD, C. J., and LARSON, THOMPSON, PETERSON, THORNTON, SNELL, and MOORE, JJ., concur.